UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30147-

| | |
|---|---|
| MESTEK, INC., ) | |
|         Plaintiff ) | |
| ) | |
| v. ) | COMPLAINT AND |
| ) | DEMAND FOR JURY TRIAL |
| MACSTEEL SERVICE CENTERS USA, INC. and ) | |
| BSC PROPERTIES, INC., ) | |
|         Defendants ) | |

**INTRODUCTION**

1. In or about November, 2001, Edgcomb Metals Company, LLC ("Edgcomb") entered into a contract to provide steel at fixed prices to Mestek, Inc. ("Mestek") for 2002. At or about the same time, Baldwin Steel Company, whose name is now BSC Properties, Inc. ("Baldwin"), also entered into a contract to provide steel at fixed prices to Mestek for 2002. Beginning in or about April, 2002 and continuing until the end of 2002, Edgcomb breached its contract with Mestek by refusing to supply steel to Mestek at the fixed prices required by the contract with Mestek.[1] In or about May, 2002, Edgcomb began to acquire Baldwin's assets. As it took over Baldwin's assets and operations, Baldwin and Edgcomb held Edgcomb out to Mestek as the successor to Baldwin in Baldwin's contract with Mestek, thereby obtaining for Edgcomb the benefits of Baldwin's contract to supply steel to Mestek. However, Edgcomb and Baldwin breached the Baldwin contract with Mestek by failing to provide steel to Mestek at fixed prices as required by Baldwin's contract with Mestek.

---

[1] In or about April, 2004, Edgcomb merged into Macsteel Service Centers USA, Inc. ("Macsteel"). See ¶27 infra.

1

2. At the time of their breaches, Edgcomb and Baldwin unfairly coerced Mestek to pay increased prices for steel, knowing that Mestek needed the steel and could not otherwise meet its steel needs from or about July, 2002 until the end of 2002. As a result of Edgcomb's and Baldwin's conduct, Mestek suffered damages of over $560,000 in increased cost of material.

## PARTIES

3. Plaintiff Mestek, Inc. is a Pennsylvania corporation with a principal place of business at 260 North Elm Street, Westfield, Massachusetts.

4. Defendant Macsteel Service Centers, Inc., successor by merger to Edgcomb, is a Delaware corporation with headquarters in Newport Beach, California.

5. Defendant BSC Properties, Inc., formerly known as Baldwin Steel Company, is a New Jersey corporation with a principal place of business in Laurence Harbor, New Jersey.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction of this matter pursuant to 28 U.S.C. §1332(a). This matter is properly brought in the District of Massachusetts, pursuant to 28 U.S.C. §1391(a)(2).

## FACTS

7. Edgcomb, via a reverse internet auction in or about November, 2001, bid to supply steel at fixed prices to Mestek for 2002 at Mestek facilities, including Mestek facilities in Westfield, Massachusetts and Dundalk, Maryland.

8. Baldwin, via a reverse internet auction in or about November, 2001, bid to supply steel at fixed prices to Mestek for 2002 at Mestek facilities, including Mestek facilities in Westfield, Massachusetts; South Windsor, Connecticut; Dallas, Texas; Farmville, North Carolina; Wyalusing, Pennsylvania; and Dundalk, Maryland.

9. In submitting their respective bids to Mestek, Edgcomb and Baldwin accepted the terms and conditions of Mestek's Internet Bidding Agreement ("Agreement") and Mestek's Bid Package Parameters ("Parameters"), including the term that the Agreement shall be interpreted under and governed by Massachusetts law.

10. By their respective bids, Edgcomb and Baldwin unequivocally offered to provide steel at fixed prices to Mestek during 2002. Neither Edgcomb nor Baldwin in their bids, or otherwise, reserved any right to change pricing at any time during 2002, the contract period.

11. Mestek accepted Edgcomb's bid to supply steel at fixed prices to Mestek for 2002 at Mestek facilities in Westfield, Massachusetts and Dundalk, Maryland, pursuant to the terms and conditions in the Agreement and the Parameters, thereby creating a binding contract between Edgcomb and Mestek ("Edgcomb contract").

12. Mestek accepted Baldwin's bid to supply steel at fixed prices to Mestek for 2002 at Mestek facilities in Westfield, Massachusetts, South Windsor, Connecticut, Dallas, Texas, Farmville, North Carolina, Wyalusing, Pennsylvania, and Dundalk, Maryland, pursuant to the terms and conditions in the Agreement and the Parameters, thereby creating a binding contract between Baldwin and Mestek ("Baldwin contract").

13. On or about December 5, 2001, Mestek confirmed in writing to Edgcomb and Baldwin their contracts for the supply to Mestek in 2002 of part of Mestek's steel requirements, and specifically confirmed the fixed price terms in both the Edgcomb contract and the Baldwin contract for the supply of steel to Mestek during 2002.

14. Throughout 2002, Mestek issued purchase orders to Edgcomb and Baldwin for the supply of steel that incorporated the terms and conditions in the Edgcomb contract and the Baldwin contract, respectively.

15. Beginning in or about April, 2002 and continuing through the end of 2002, Edgcomb breached the Edgcomb contract by failing and refusing to supply steel to Mestek at the fixed prices in the Edgcomb contract.

16. Edgcomb at the time of its breaches of the Edgcomb contract knew or had reason to know that the market price for steel was higher than the fixed prices in the Edgcomb contract and that Mestek could not be immediately assured that alternative sources of steel would satisfy Mestek's steel requirements and quality standards. In addition, Edgcomb knew or should have known that Mestek, constrained by its firm contractual commitments and competitive marketplace pressures, was unable to pass Edgcomb's price increases to Mestek's customers.

17. In or about May, 2002, Edgcomb and Macsteel began to acquire inventory and other assets of Baldwin's steel supply operation.

18. Beginning in or about June, 2002, Edgcomb succeeded to Baldwin in the Baldwin contract to supply steel at fixed prices to Mestek.

19. In June, 2002, Edgcomb specifically represented to Mestek that "[a]ll on order positions of Baldwin's Jersey City business have been changed to Edgcomb Metals' Eastern Region plants." On order positions of Baldwin's Jersey City business at the time of Edgcomb's representation included Mestek purchase orders placed or to be placed pursuant to the Baldwin contract.

20. Beginning in or about July, 2002 and continuing through the end of 2002, Edgcomb and Baldwin breached the Baldwin contract by failing to supply Mestek with steel at the fixed prices in the Baldwin contract.

21. Edgcomb and Baldwin at the time of their breaches of the Baldwin contract knew or had reason to know that the market price for steel was higher than the fixed prices in the

4

Baldwin contract and that Mestek could not be immediately assured that alternative sources of steel would satisfy Mestek's steel requirements and quality standards. In addition, Edgcomb and Baldwin knew or should have known that Mestek, constrained by its firm contractual commitments and competitive marketplace pressures, was unable to pass Edgcomb's and Baldwin's price increases to Mestek's customers.

22. At the time of its breaches of the Baldwin contract, Edgcomb held itself out, generally and to Mestek, as the successor to Baldwin. Edgcomb continuously and obviously used and relied on Baldwin's personnel and management, Baldwin's assets, and Baldwin's general business operations to perform under the Baldwin contracts. Further, Baldwin appeared to cease its ordinary operations as a supplier of steel to Mestek and others as a result of Edgcomb's acquisition of Baldwin's assets.

23. Mestek did not accept the new, higher prices forced upon Mestek by Edgcomb and Baldwin. Mestek under protest paid to Edgcomb and to Baldwin amounts for their supply of steel in excess of the fixed prices in the Baldwin and Edgcomb contracts. The difference between the fixed prices in the Edgcomb contract and Baldwin contract and the price Mestek paid to Edgcomb and to Baldwin under protest exceeds the five hundred and sixty thousand dollars.

24. Edgcomb and Baldwin engaged in unfair acts or practices with Mestek, including but not limited to their coercion of Mestek to pay more than the fixed contract prices for steel.

25. Edgcomb engaged in deceptive acts or practices with Mestek including, but not limited to, holding Edgcomb out to Mestek as the successor to Baldwin's contractual obligations in order to obtain the benefits of Baldwin's contract to supply steel to Mestek without fulfilling the corresponding obligations set forth in that contract.

26. Edgcomb's and Baldwin's unfair and deceptive practices caused harm to Mestek. The harm occurred primarily and substantially in Massachusetts: a substantial percentage of the steel Edgcomb and Baldwin supplied to Mestek was supplied in Massachusetts, and the damage to Mestek from Edgcomb's unfair and deceptive acts or practices occurred in Massachusetts, where Mestek has its headquarters and principal place of business.

27. In or about April, 2004, Edgcomb merged into Macsteel. Macsteel is, therefore, liable for Edgcomb's conduct, including its breach of the Edgcomb and Baldwin contracts and Edgcomb's unfair and deceptive practices.

## COUNT I
### (Breach of Contract - Macsteel)

28. Mestek hereby adopts by reference the allegations contained in paragraphs 1 through 27 above.

29. Edgcomb's failure to fulfill its obligations under the Edgcomb contract with Mestek to supply steel at fixed prices for 2002 is a breach of contract.

30. As a result of Edgcomb's breach of contract, Mestek has been and continues to be damaged.

31. Macsteel as successor by merger to Edgcomb is liable for Edgcomb's conduct.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing - Macsteel)

32. Mestek hereby adopts by reference the allegations contained in paragraphs 1 through 31 above.

6

33. Edgcomb's conduct destroyed or injured Mestek's right to enjoy the fruits of its contract and constitutes a breach of the implied covenant of good faith and fair dealing in connection with Edgcomb's contract with Mestek.

34. As a direct and proximate cause of Edgcomb's breach of the implied covenant of good faith and fair dealing, Mestek has been and continues to be damaged.

35. Macsteel as successor by merger to Edgcomb is liable for Edgcomb's conduct.

## COUNT III
### (Violation of Mass. Gen. L. c. 93a - Macsteel)

36. Mestek hereby adopts by reference the allegations contained in paragraphs 1 through 35 above.

37. Mestek and Edgcomb are engaged in trade or commerce.

38. By the conduct described above, Edgcomb engaged in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Mass. Gen. L. c. 93A §§ 2 and 11.

39. Edgcomb's unfair and deceptive acts or practices were willful.

40. As a result of Edgcomb's unfair and deceptive acts or practices in the conduct of trade or commerce, Mestek has been and will continue to be damaged.

41. Macsteel as successor by merger to Edgcomb is liable for Edgcomb's conduct

## COUNT IV
### (Breach of Contract – Baldwin and Macsteel)

42. Mestek hereby adopts by reference the allegations contained in paragraphs 1 through 41 above.

43. Baldwin's and Edgcomb's failure to fulfill Baldwin's obligations under the Baldwin contract with Mestek to supply steel at fixed prices for 2002 is a breach of contract.

7

44. As a result of Baldwin's and Edgcomb's breach of contract, Mestek has been and continues to be damaged.

45. Macsteel as successor by merger to Edgcomb is liable for Edgcomb's conduct.

## COUNT V
### (Breach of the Implied Covenant of Good Faith and Fair Dealing – Baldwin and Macsteel)

46. Mestek hereby adopts by reference the allegations contained in paragraphs 1 through 45 above.

47. Baldwin's and Edgcomb's conduct destroyed or injured Mestek's right to enjoy the fruits of its contract and constitutes a breach of the implied covenant of good faith and fair dealing in connection with the Baldwin contract.

48. As a direct and proximate cause of Baldwin's and Edgcomb's breach of the implied covenant of good faith and fair dealing, Mestek has been and continues to be damaged.

49. Macsteel as successor by merger to Edgcomb is liable for Edgcomb's conduct.

## COUNT VI
### (Violation of Mass. Gen. L. c. 93a – Baldwin)

50. Mestek hereby adopts by reference the allegations contained in paragraphs 1 through 49 above.

51. Mestek and Baldwin are engaged in trade or commerce.

52. By the conduct described above, Baldwin engaged in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Mass. Gen. L. c. 93A §§ 2 and 11.

53. Baldwin's unfair and deceptive acts or practices were willful.

54. As a result of Baldwin's unfair and deceptive acts or practices in the conduct of trade or commerce, Mestek has been and will continue to be damaged.

WHEREFORE, Mestek respectfully demands that this Court:

A. Enter judgment on Counts I, II, and III for Mestek against Macsteel for damages, interest and costs.

B. Enter judgment on Counts IV and V for Mestek against Macsteel and Baldwin, jointly and severally, for damages, interest and costs.

C. Enter judgment on Count VI for Mestek against Baldwin for damages, interest and costs.

D. Enter judgment on Counts III and VI against Macsteel and Baldwin for multiple damages and attorney's fees.

E. Award such other relief as the court may deem proper.

## JURY DEMAND

Mestek hereby requests a trial by jury as to all issues so triable.

Dated: August 9, 2004

The Plaintiff,
MESTEK, INC.
By Its Attorneys:

_____
Francis D. Dibble, Jr. - BBO No. 123220
Kevin C. Maynard - BBO No. 550669
Bulkley, Richardson and Gelinas, LLP
1500 Main Street - Suite 2700
Springfield, MA 01115-5507
Tel: (413) 781-2820
Fax: (413) 272-6804